**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 7, 2022

David H. Holloway, Esquire
Shlansky Law Group, LLP
1504 North Broom Street
Wilmington, DE  19806

Jody C. Barillare, Esquire
Amy M. Dudash, Esquire
Morgan Lewis & Bockius, LLP
1201 North Market Street
Wilmington, DE  19801

Catherine G. Dearlove
Caroline M. McDonough
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

> RE:  *Edward Deane, et al. v. Robert Maginn, Jr.*
>       C.A. No. 2017-0346-LWW

Dear Counsel:

I write regarding fees and expenses incurred by non-party Jenzabar, Inc. in opposing the plaintiffs' Second Motion to Compel (the "Motion").  I previously shifted fees in connection with the Motion.  This Letter Opinion addresses the amount of reasonable fees and expenses Jenzabar is entitled to.

## I.     BACKGROUND

Jenzabar produced documents in response to a subpoena served by the plaintiffs.  Certain documents were withheld for privilege and listed on Jenzabar's

privilege log.  The plaintiffs' Motion broadly challenged that privilege log.[1]

For example, the plaintiffs averred that they had a "good faith basis to believe the documents cited in Jenzabar's privilege log [we]re not privileged."[2]  They argued that the log's small font was "obfuscatory" to prevent "assessment of the claims of privilege."[3]  They sought the production of every document Jenzabar had withheld or, in the alternative, *in camera* review of those documents.[4]  But the plaintiffs made no attempt to outline specific issues with individual (or even groups of) privilege assertions.  Moreover, the plaintiffs failed to appropriately meet and confer with Jenzabar before filing the Motion.[5]

Jenzabar's opposition to the Motion included a 10-page declaration (with 10 exhibits) filed by counsel at Richards, Layton & Finger, P.A. ("RLF") detailing their attempts to engage with the plaintiffs' counsel about Jenzabar's privilege log.[6]  Senior Delaware counsel at RLF stated that the "privilege assertions contained in

---

[1] Pls.' Mot. to Compel Disc. from Jenzabar, Inc. (Dkt. 211).

[2] *Id.* at 3.

[3] *Id.* at 5.

[4] *Id.* at 3, 5.

[5] The plaintiffs sent a "meet and confer" letter less than six hours before filing the Motion. *See* Opp'n to Pls.' Mot. (Dkt. 227) ¶ 3.

[6] Unsworn Decl. of C. Dearlove (Dkt. 228).

Jenzabar's log ha[d] been made with integrity and in accordance with Delaware law and practice."[7]

The plaintiffs' reply in further support of their Motion raised various additional arguments, including the *Garner* doctrine and the crime-fraud exception to attorney-client privilege.[8] The plaintiffs insisted that meeting and conferring with Jenzabar would have been futile."[9]

On March 8, 2022, after oral argument, I denied the plaintiffs' Motion. I declined to conduct an *in camera* review of the documents Jenzabar had withheld or to second-guess Jenzabar's privilege determinations given that the plaintiffs "put forth no specific factual or legal basis by which [the court] could conclude that the privilege ha[d] not been properly applied."[10] Jenzabar's request under Court of Chancery Rule 37(a)(4)(B) for an award of fees and expenses incurred in connection with the Motion was granted.

The next day, an Order denying the Motion and shifting fees was entered:

> Because the Motion is denied in full, Court of Chancery
> Rule 37(a)(4)(B) mandates fee shifting unless the motion

---

[7] *Id.* ¶ 24.

[8] Pls.' Reply in Supp. of Mot. (Dkt. 233).

[9] *Id.* at ¶ 6.

[10] Mar. 8, 2022 Hearing Tr. (Dkt. 304) at 61.

was "substantially justified" or shifting fees would be unjust under the circumstances. . . .

After considering the parties' positions, I conclude that Rule 37 compels fee shifting—as Jenzabar requests. The Motion sought to challenge every entry on Jenzabar's privilege log and there was no valid basis why the plaintiffs did not meaningfully meet and confer with Jenzabar in advance of the Motion's filing . . . .[11]

On March 15, 2022, Jenzabar submitted an affidavit (the "Fee Affidavit") setting forth the relevant time expended by attorneys and other billing professionals at RLF.[12] The Fee Affidavit stated that RLF spent 129.8 hours of attorney and paraprofessional time to prepare and present Jenzabar's opposition to the Motion and that the value of those services was $104,802.50.[13] RLF also incurred $851.63 in expenses.[14]

On March 23, 2022, counsel for the plaintiffs filed a letter objecting to the amount of fees sought by the Fee Affidavit.[15] The plaintiffs requested permission to file a substantive opposition challenging the reasonableness of

---

[11] Mar. 9, 2022 Order (Dkt. 250) at cmts.

[12] Aff. of C. Dearlove (Dkt. 269).

[13] *Id.* ¶ 4.

[14] *Id.* ¶ 6.

[15] Letter to V.C. Will from D. Holloway (Dkt. 280).

RLF's fees. Because Rule 37(a)(4)(B) provides that a non-moving party shall have an "opportunity to be heard," I granted the plaintiffs' request.[16]

On May 17, 2022, Jenzabar filed its opening submission in further support of its fee request.[17] It was accompanied by an affidavit (the "Second Affidavit") from counsel at RLF that corrected certain errors in the Fee Affidavit and provided detailed information about the total fees and expenses incurred by Jenzabar in opposing the Motion.[18] The Second Affidavit attached RLF's invoices, which were annotated to highlight the specific services RLF provided. The Second Affidavit stated that Jenzabar incurred $111,253.12 of fees and expenses in opposing the Motion, based on 139.4 hours of RLF's time. But, given the calculation error, Jenzabar limited its request to the amount set forth in the original Fee Affidavit ($105,654.13).[19]

The plaintiffs subsequently filed an opposition to Jenzabar's submissions.[20] The opposition asserted that Jenzabar "fail[ed] to justify" how

---

[16] Letter to Counsel from V.C. Will (Dkt. 300).

[17] Non-Party Jenzabar, Inc.'s Opening Submission (Dkt. 309).

[18] Second Aff. of C. Dearlove (Dkt. 309).

[19] *Id.* ¶¶ 3-4.

[20] Pls.' Opp'n to Non-Party Jenzabar, Inc.'s Mot. (Dkt. 313).

it spent 139.4 hours of professional time opposing the Motion.[21] The plaintiffs called RLF's billing "excessive" and "unreasonable" and asked the court to cap the fees awarded at $10,000.[22]

Jenzabar filed a reply in further support of its request, attaching an affidavit confirming that the rates charged to Jenzabar are what RLF customarily charges its clients.[23]

## II.    ANALYSIS

Discovery should be a "cooperative and self-regulating process managed between the parties."[24] But where communication breaks down, the Court of Chancery Rules provide for judicial intervention.[25] Rule 37(a)(4)(B) is one such example. It creates an "incentive structure" to encourage parties

---

[21] *Id.* ¶ 2.

[22] *Id.* at 14.

[23] Non-Party Jenzabar's Reply Submission (Dkt. 319). Oral argument was unnecessary. The plaintiffs' opposition provided a sufficient opportunity to be heard.

[24] *Cartanza v. Cartanza*, 2013 WL 1615767, at *2 (Del. Ch. Apr. 16, 2013).

[25] *See Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2008 WL 241616, at *1 (Del. Ch. Jan. 17, 2008).

to resolve discovery disputes out of court and imposes remedies where that

fails.[26]

Rule 37(a)(4)(B) states that if a motion to compel is denied, the court:

> *shall*, after affording an opportunity to be heard, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, *unless* the Court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.[27]

That is, the rule mandates fee shifting where motions to compel are denied unless

the movant's conduct was "substantially justified" or doing so would be unjust.

I previously held that the plaintiffs' Motion was not substantially justified and

that shifting fees was not unjust.[28]  The Motion was premature.  The plaintiffs failed

to fulfill their meet and confer obligations and appropriately refine the bounds of

their discovery dispute before involving the court.  The plaintiffs' actions placed

avoidable and weighty burdens on the court and non-party Jenzabar.

---

[26] *In re Appraisal of Dole Food Co.*, 114 A.3d 541, 563 (Del. Ch. 2014) (explaining that fee shifting under Rule 37 is "the consequence . . . as a part of an incentive structure intended by the drafters of [Rule 37] to limit the need for judicial intervention in discovery disputes").

[27] Ct. Ch. R. 37(a)(4)(B) (emphasis added).

[28] Mar. 9, 2022 Order (Dkt. 250); *see* Mar. 8, 2022 Hearing Tr. (Dkt. 304).

Jenzabar is not, however, entitled to reimbursement for the full amount sought. The invoices submitted with the Second Affidavit show that Jenzabar is seeking to recover for time counsel spent re-reviewing its privileged documents after the Motion was filed.[29] Jenzabar's counsel had surely reviewed its privileged documents before logging them. And if the plaintiffs' counsel had properly raised its specific objections to Jenzabar's privilege log before filing the Motion, RLF would likely have taken another look at its privilege calls to prepare for a meet and confer. Thus, time reviewing Jenzabar's privileged documents would have been incurred irrespective of whether the Motion was filed.

That leaves the question of whether the remaining fees sought—for preparing the opposition to and for argument on the Motion—were "reasonable expenses."[30] This court "has broad discretion in determining the amount of fees and expenses to award."[31] In assessing the reasonableness of a fee application, the court looks to Rule 1.5(a) of the Delaware Lawyers' Rules of Profession Conduct. Rule 1.5(a) states that Delaware courts should:

---

[29] Non-Party Jenzabar, Inc.'s Opening Submission (Dkt. 309) Exs. A-C.

[30] Ct. Ch. R. 37(a)(4)(B).

[31] *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE) (citation omitted).

> evaluate the reasonableness of fees looking to, among other factors, the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal services, the fee customarily charged in the locality for similar legal services, the nature and length of the professional relationship with the client and the experience, reputation and ability of the lawyer or lawyers performing the services.[32]

These factors support the reasonableness of RLF's fees.

RLF's hourly rates are comparable to rates approved in recent cases for attorneys of similar experience and expertise.[33] The rates cited by the plaintiffs' counsel to suggest otherwise appear to be derived from a fee schedule published by Community Legal Services of Pennsylvania and other inapposite contexts.

RLF asserts that it has represented Jenzabar for almost 20 years. That long relationship indicates Jenzabar believes RLF's rates are reasonable. Jenzabar's agreement to pay RLF's fees on a non-contingent basis "provide[s] an initial 'rough cut' of a commercially reasonable fee."[34]

---

[32] *Greenstar IH Rep., LLC v. TutorPerini Corp.*, 2019 WL 6884752, at *2 (Del. Ch. Dec. 4, 2019).

[33] *See, e.g.*, *Roma Landmark Theaters, LLC v. Cohen Exhibition Co.*, 2021 WL 5174088, at *5-6 (Del. Ch. Nov. 8, 2021) (finding hourly rate of $1,645 to be reasonable).

[34] *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012) (quoting *Wis. Inv. Bd. v. Bartlett*, 2002 WL 568417, at *6 (Del. Ch. Apr. 9, 2002), *aff'd*, 808 A.2d 1205 (Del. 2002)).

Finally, the questions posed by the Motion were not novel or especially complex. But the breadth of the Motion was sprawling, making a response a time-consuming and tedious exercise. RLF's skill and experience were needed to analyze and argue a hodgepodge of matters—including various privilege doctrines.

The plaintiffs would have me second-guess RLF's approach to billing and staffing. But the court should not "examine individually each time entry and disbursement" in determining the reasonableness of fees.[35] Doing so is neither "useful nor practicable."[36] I decline to undermine RLF's judgment in that regard.[37]

Accordingly, Jenazbar is entitled to reimbursement for the expenses and attorneys' fees incurred in connection with: (1) reviewing and analyzing the Motion;

---

[35] *Lynch v. Gonzalez*, 2020 WL 5587716, at *2 (Del. Ch. Sept. 18, 2020).

[36] *Weichert Co. v. Young*, 2008 WL 1914309, at *2 (Del. Ch. May 1, 2008); *see also In re Dole Food Co. Inc. S'holder Litig.*, 2015 WL 496533, at cmts. (Del. Ch. Feb. 5, 2015) (ORDER) (finding that "[t]he time incurred . . . as well as the staffing . . . fell within reasonable range where it is appropriate to defer to tactical judgment of experienced counsel"); *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *7 (Del. Ch. Aug. 13, 2010) (awarding fees for time incurred by 20 attorneys).

[37] *See Arbitrium (Cayman Is.) Handels AG v. Johnston*, 1998 WL 155550, at *2 (Del. Ch. Mar. 30, 1998) ("[C]ounsel ha[s] represented to the Court that all fees being sought here are for services rendered in this action . . . [n]o reason has been shown why counsels' representation is not creditworthy."), *aff'd*, 720 A.2d 542 (Del. 1998); *Lynch*, 2020 WL 5587716, at *2 (noting that "to second guess, on a hind-sight basis, an attorney's judgment as to whether work was necessary is hazardous, and should whenever possible be avoided").

(2) preparing an opposition to the Motion; and (3) preparing for and participating in argument on the Motion. After reviewing RLF's invoices, I conclude that approximately $60,000 of attorneys' fees was incurred in those contexts.[38] Though this amount is high, it is not unreasonable. It is a direct result of the plaintiffs' unjustified Motion. Awarding just $10,000, as the plaintiffs request, would not make non-party Jenzabar whole in these circumstances.

## III. CONCLUSION

Within 30 days of this Letter Opinion, the plaintiffs shall reimburse Jenzabar for $60,000 of attorneys' fees and all expenses ($851.63) incurred in opposing the Motion. IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[38] This analysis is not an exact science. The $60,000 figure is based on my attempt to segment out time entries where counsel conducted document review and undertook tasks that were not focused on opposing the Motion. Certain entries that were block billed made a more granular analysis impossible. I have also rounded amounts to reach an even figure.